■ In the Matter of MAMARONECK BEACH & YACHT CLUB, INC., et al., Respondents, v ZONING BOARD OF APPEALS OF VILLAGE OF MAMARONECK et al., Appellants, et al., Respondents. [862 NYS2d 81]—

In a proceeding, inter alia, pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Village of Mamaroneck dated November 2, 2006, which, after a hearing, annulled a determination of the Director of Building of the Village of Mamaroneck dated January 14, 2004 that the petitioners' proposed use of the subject premises was a permitted accessory use under the Zoning Code of the Village of Mamaroneck, the Zoning Board of Appeals of the Village of Mamaroneck and Mauro Gabriele, George Mgrditchian, Clark Neuringer, Peter Jackson, and Gregory Sullivan, individually and as members of the Zoning Board of Appeals of the Village of Mamaroneck, appeal, as limited by their brief, and Leonard Aubrey, individually and as the president of Shore Acres Property Owners Association, separately appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Westchester County (Lippman, J.), dated January 24, 2007, as granted the petition and annulled the determination.

Ordered that the judgment is affirmed insofar as appealed from, without costs or disbursements.

The petitioners own and operate a beach and yacht club on premises located in the marine recreation zoning district (hereinafter the MR District) of the Village of Mamaroneck. In Janu-

ary 2004 the petitioners submitted a site plan application to the Planning Board of the Village of Mamaroneck (hereinafter the Planning Board) which proposed, inter alia, the construction of 31 seasonal residences. Under the version of the zoning provisions of the Code of the Village of Mamaroneck (hereinafter the Zoning Code) that was in effect in January 2004, the sole permitted principal use in the MR District was the operation of a membership club; seasonal residences for club members and guests were permitted accessory uses in conjunction with this permitted principal use. In a memorandum to the Planning Board dated January 14, 2004 the Village Director of Building advised the Planning Board that the petitioners' proposed construction was a permitted use under the Zoning Code.

On March 12, 2004 Shore Acres Property Owners Association (hereinafter SAPOA), an association of neighboring landowners, appealed from that determination to the Village Zoning Board of Appeals (hereinafter the ZBA), seeking review of the "interpretation" by the Director of Building, and a contrary "interpretation" of the relevant provisions of the Zoning Code. On March 25, 2004 the petitioners appeared before the Planning Board for a public hearing on their application for site plan approval. They were informed that, pending the appeal to the ZBA, the Planning Board would not consider site plan approval for the site.

On April 14, 2004 the petitioners commenced a proceeding pursuant to CPLR article 78 to compel the Planning Board to consider the site plan application. In a judgment entered April 21, 2004, the Supreme Court granted the petition and directed the Planning Board to review the site plan and render a decision pursuant to the Zoning Code "as presently written without further delay." In that judgment, which was affirmed by this Court (see Matter of Mamaroneck Beach & Yacht Club, Inc. v Fraioli, 24 AD3d 669 [2005]), the Supreme Court stated that SAPOA "submitted an application to the Village's Zoning Board of Appeals" seeking review of the determination of the Director of Building that the proposal complied with the Zoning Code, but that, contrary to the Planning Board's contention, such an administrative appeal did not stay the Planning Board's proceedings pursuant to Village Law § 7-712-a (6) because that appeal was prosecuted by neighboring landowners, and not by the landowner of the subject site.

On April 26, 2004, however, the Village Board of Trustees enacted a moratorium, which barred consideration by any Village board or agency of "all permits and approvals within" the MR District, and barred the ZBA from providing interpretations

of the Zoning Code relating to the MR District. Nearly two years later, in a post-judgment order dated April 20, 2006, the Supreme Court directed the Planning Board to commence site plan review within 30 days, or be held in contempt, ruling that the judgment dated April 20, 2004, "trumped" the moratorium. SAPOA consequently requested that the ZBA finally hear and determine its administrative appeal on the ground that the Supreme Court had found that the moratorium on processing such appeals had been superseded by the order dated April 20, 2006.

On May 8, 2006 the Village suspended the moratorium and enacted new provisions of the Zoning Code which limited to 12 the number of seasonal residences any membership club may construct in an MR District (see Zoning Code § 342-35 [B] [5]). The public hearing on SAPOA's administrative appeal to the ZBA commenced on June 1, 2006, only weeks after the amendment to the Zoning Code was enacted. SAPOA claimed that the calendaring of the appeal was delayed not through any fault of its own, but solely because the moratorium was in effect. In fact, the moratorium had precluded consideration of the appeal, since it barred the ZBA from granting an "interpretation" for any property in the MR District.

At the hearing, the Chairperson of the ZBA noted that the delay in hearing the administrative appeal caused SAPOA and the Village to "expend a significant amount of legal fees." Beth Hofstetter, who was president of SAPOA at the time the administrative appeal to the ZBA was filed, disputed that SAPOA was at fault. She stated that "it [the appeal] was brought into the Building Department at the time and then that was it," and she asserted that she was notified that the stack of papers submitted in connection with the administrative appeal was still in the offices of Building Department "a month ago," i.e., one month prior to the hearing. The Chairperson responded that the appeal to the ZBA should have been brought to the "forefront as soon as possible" to avoid needless litigation.

On November 2, 2006 the ZBA determined that the proposed use was not an accessory use, which is defined in Zoning Code § 342-3 (B) as a use "customarily incidental and subordinate to the principal use of the land or building located on the same lot with such principal use." This determination was based upon evidence that the residences would occupy more than 50% of the total building square footage on the subject site. The ZBA further noted that similar accessory uses at other clubs did not have individual kitchens, while the proposed residences did,

thus casting further doubt on whether the proposed use was accessory or principal.

The petitioners then commenced the instant proceeding pursuant to CPLR article 78 to review the ZBA's determination dated November 2, 2006. The Supreme Court, in the judgment appealed from, inter alia, annulled the determination on the ground that SAPOA's administrative appeal to the ZBA was untimely heard. On the merits, the Supreme Court held that although the Zoning Code defined an accessory use as one "customarily incidental and subordinate to" the principal use of the subject site as a clubhouse, it did not follow that the accessory use could not be larger in square footage than other structures on the site. We affirm the judgment insofar as appealed from.

Village Law § 7-712-a (5) (b) states that an appeal from a determination of an administrative official shall be taken, within 60 days after the filing of the determination, "by filing with such administrative official and with the board of appeals a notice of appeal, specifying the grounds thereof and the relief sought." The Supreme Court found that SAPOA "arguably satisfied the 60 day time limit." This determination is consistent with the prior determination in *Matter of Mamaroneck Beach & Yacht Club, Inc. v Fraioli* (24 AD3d 669 [2005]), which noted that SAPOA timely filed an administrative appeal to the ZBA, a filing that formed the basis for the Planning Board's 2004 determination to defer consideration of the petitioners' application for site plan approval. It appears that the appeal was timely filed; however, it was not timely considered.

The moratorium explicitly barred the ZBA from granting "an interpretation for any property in the Marine Recreation (MR) District." Nevertheless, the facts in the record establish that the Village willfully and unduly delayed the proceedings, and only enacted revised zoning provisions after it was informed that further delay could result in a contempt citation. There is evidence that both the moratorium and the ensuing zoning amendments were prompted by the petitioners' site plan application and were intended to prevent the petitioners from constructing the proposed seasonal housing. Under the circumstances, the "special facts exception" applies (*see Matter of Pokoik v Silsdorf*, 40 NY2d 769, 772-773 [1976]; *Caruso v Town of Oyster Bay*, 250 AD2d 639 [1998]; *Figgie Intl. v Town of Huntington*, 203 AD2d 416 [1994]), and the ZBA was required to apply the original zoning code, contrary to the general rule that the current law must be applied (*see Matter of Jul-Bet Enters., LLC v Town Bd. of Town of Riverhead*, 48 AD3d 567 [2008]; *Matter of D'Agostino Bros. Enters., Inc. v Vecchio*, 13 AD3d 369 [2004]).

Although the ZBA applied the original code, it nevertheless ruled against the petitioners on the ground that the proposed accessory use exceeded 50% of the total building square footage at the site, which the ZBA found was contrary to the definition of an accessory use as one "customarily incidental and subordinate to the principal use of the land or building" (Zoning Code § 342-3 [B]). In so doing, however, the ZBA acknowledged that the Zoning Code did "not seem to place a limitation as to the magnitude of square footage associated with an 'accessory use.' " Indeed, the Zoning Code specifically provided, without reference to floor area, that "seasonal residences for club members and guests" were permitted as accessory uses in the MR District, where the subject property is located (Zoning Code former § 342-35 [B] [6]).

"It is well settled that zoning codes, being in derogation of the common law, must be strictly construed against the enacting municipality and in favor of the property owner" in accordance with their ordinary meaning (*Matter of Baker v Town of Islip Zoning Bd. of Appeals,* 20 AD3d 522, 523 [2005]; *see FGL & L Prop. Corp. v City of Rye,* 66 NY2d 111, 115 [1985]). Ambiguities, if any, are to be resolved in favor of the property owner (*see Incorporated Vil. of Saltaire v Feustel,* 40 AD3d 586 [2007]). A zoning board has the discretion to interpret an ambiguous provision in cases where "it would be difficult or impractical" to promulgate a "definitive" ordinance (*Matter of Arceri v Town of Islip Zoning Bd. of Appeals,* 16 AD3d 411, 412 [2005]). However, in the instant case, the Zoning Code was thereafter amended to limit the number of permitted seasonal residences to 12, demonstrating that the promulgation of a "definitive ordinance" was neither difficult or impractical.

The primary use of the petitioner's property is as a membership yacht club, which is not confined to a building. Other permitted uses include outdoor recreational uses such as docks, swimming pools, beaches, and tennis courts, as well as buildings providing club facilities (Zoning Code former § 342-35 [B] [2], [3]). The ZBA, in engrafting area requirements upon provisions defining a permissive accessory use, based upon the square footage of other building structures on the property, was irrational and unreasonable (*see Matter of Baker v Town of Islip Zoning Bd. of Appeals,* 20 AD3d 522, 523 [2005]).

In view of the foregoing, the Supreme Court properly annulled the ZBA's determination dated November 2, 2006. Lifson, J.P., Florio, Angiolillo and Chambers, JJ., concur.